McKee, &c.
*vs*
McKee's ex'rs.

---

## McKee, &c *vs* McKee's Executors.

### Error to the Lincoln Circuit.

*Administrators. Husband and wife. Executors.*

Chancery.

Case 114.

Judge Simpson delivered the opinion of the Court.

June 30.

In 1834, the executors of Samuel McKee filed a bill alledging that they had been compelled to pay a fee of one hundred and fifty dollars, due to Solomon P. Sharp, for services rendered by him as an attorney at law, for the benefit of the estate of Henry Pawling, under an engagement made with their testator as Pawling's executor. That the personal assets of Pawling's estate, had all been expended in the payment of other debts and demands. That Pawling had devised a large estate both real and personal, to Polly Watkins, who intermarried with Darius McKee, both of whom were dead, leaving issue William M'Kee and Jane McKee, to whom, as the heirs at law of their mother, the real estate of Pawling had descended. They, therefore, prayed for a decree against said heirs for the amount paid by them in satisfaction of the fee aforesaid.

The claims in the bill.

The fee paid by the complainants and claimed in this suit, originated as follows: Pawling, in his lifetime, together with other individuals, became the surety of Buford in a bond executed to the United States for the faithful discharge of his duties as deputy commissary. Suit having been instituted on this bond after Pawling's death, and his executor conceiving the estate deeply interested in the result, employed Sharp as counsel to defend it. The suit having been tried, was decided in favor of the defendants, and for the services rendered

by Sharp as counsel in attending to its defence, he charged a fee of one hundred and fifty dollars.

*The answer made a cross bill and its claims.*

The heirs of Polly McKee denied the justice of the claim. They alledged that the complainant's testator, Samuel McKee, had, as executor of Pawling, received a large amount of hires for slaves, and rents for land, which he had never accounted for. That he had converted to his own use, sundry slaves, and that a settlement made by him as executor, with the County Court, was unjust in several particulars, which they specified. They made their answer a cross bill, and prayed for a decree over.

*Decree of the Circuit Court.*

The Court below dismissed the cross bill with costs, and rendered a decree in favor of the complainants in the original bill, for the fee of one hundred and fifty dollars and costs, to be made of the assets descended to the defendants, if sufficient, if not, then of their own estate. From this decree the defendants prosecute this writ of error.

Admitting the employment of counsel under the circumstances, to have been proper, and the expense incurred by the executor in defending the suit, to have constituted a fair and legal credit in his favor, in the settlement of his executorial accounts, the question still occurs, as to his right to hold the real estate of his testator in the hands of the devisee, or the heir of the devisee, liable for the demand.

*An executor who suffers personal estate to pass thro' his hands to the heir or devisee without a refunding bond, will not be permitted afterwards to charge the expenses of administra'n upon the real estate in the hands of the heir.*

Inasmuch as it is a debt for which Pawling was not responsible, the liability of the real estate in the hands of his devisee, might be difficult to maintain. But whether the real estate in the hands of the devisee or heir, could, under any circumstances, be subjected to the payment of the expenses of administration, it is not necessary at this time to determine, as we are fully satisfied, that in this case it cannot be done.

The executor of Pawling had assets in his hands sufficient to have discharged every demand against him in his fiduciary character. Having paid these assets, which were primarily liable to the payment of debts and expenses of administration, over to Darius McKee, the husband of the devisee, shall he be permitted to im-

pose a burthen upon the real estate, which properly and legally attaches to this fund? Or was it not his duty to follow this fund into the hands of the husband or his representative, and subject it to the payment of this debt?

In permitting assets to go out of his hands, whilst any claims against him as executor, remained unsatisfied, it was his duty to have taken from the husband of the devisee a refunding bond, to re-pay so much of the amount received by him, as might be necessary for the payment of debts and expenses, and it would be strange if an omission of this duty on his part should have the effect to impose a liability on the heir or devisee, and charge the real estate in their hands. He had an unquestionable right to require the estate which he had passed out of his hands, or so much as was necessary to the payment of debts and expenses of administration to be refunded; but as it had passed into the hands of Darius McKee, the husband, it was a liability resting on him alone, and for which his wife was not responsible; and consequently her estate cannot be subjected to its payment.

It was, therefore, erroneous to render a decree against the heirs of Polly McKee on this account, the complainants not having manifested any right to render the real estate descended to them from their mother, liable to this demand.

It is, in the next place, necessary to enquire, whether the defendants have or not, established any right to relief on their cross bill.

The attempt to surcharge and falsify the County Court settlement, has not, in our opinion, been successful. For the hires and rents accruing subsequent to the settlement, the executor accounted with Darius McKee, the husband of Polly Watkins, as is conclusively shown by the evidence in the record. He also surrendered to the husband all the slaves to which his wife, Polly, had a right as Pawling's devisee. But it is contended, the delivery of the slaves and the settlement of the hires and rents, occurred after the death of the wife, and as

McKee, &c.
vs
McKee's ex'rs.

The husband, though he be not the adm'r. of the wife, having after her death, in the absence of any personal representative, received assets due in her right, will be · regarded in equity as entitled to them in the absence of any proof of indebtedness due by the wife.

the husband had not administered on the estate of his wife, his acts as husband, are not binding on her heirs.

If it were true, that the husband had not received the estate during the lifetime of his wife, but afterwards as husband, and not as administrator, still as no person other than the personal representative of the wife, could demand it, and when collected, it would in equity, belong to the husband, if living, or his personal representative if he were dead, it would seem to be right and just to consider a payment to him as a good equitable set-off against the claim, to the extent of his interest. And as it is not shown that any debts due by the wife remained unpaid, the husband would be entitled to the whole estate in the hands of the administrator. But the complainants in the cross· bill, not having administered on the estate of their mother, are not, themselves, in an attitude to assert this claim.

It is, however, perfectly certain the husband received the slaves from the executor, during the lifetime of his wife, shortly after their intermarriage. The testimony on this point, is direct and conclusive. We also think, the testimony establishes the fact, that the hires of the slaves and the rents of the land were paid to the husband before the death of his wife. She died in November, 1822. After her death, in December, 1823, a settlement was made between her husband and Pawling's executor, purporting to embrace all accounts between them. It relates to other matters exclusively, but creates a strong, and indeed irresistable presumption, that the rents and hires had been previously settled. It shows that a note was executed by her husband on the 14th July, 1822, which was during her lifetime, to the executor, for the sum of eight hundred and thirty three dollars. This circumstance creates a strong presumption in favor of the conclusion, that the rents and hires had been received, otherwise the note would not have been executed. Indeed it is abundantly manifest, that Darius McKee was embarrassed in his pecuniary affairs, and his condition required the use and employment of all the means which he could command.

We are, therefore, taking all the facts and circumstances into consideration, perfectly satisfied he had received from the executor, during the lifetime of his wife, not only the slaves, but also the hires and the rents of the land, and that no part of the estate remained in the executor's hands.

The decree, therefore, dismissing the cross bill being correct, is affirmed. But the decree on the original bill being erroneous, is reversed, and cause remanded with directions to dismiss the bill with costs.

*Turner* for plaintiffs: *Herndon* for defendants.